Case number 23-2450 from the District of Minnesota, Christian Labor Association et al. v. City of Duluth et al. All right. Mr. Mitchell, you may proceed when you're ready. Thank you, Your Honors. May it please the Court. The plaintiffs in this case are challenging the legality of a project labor agreement that cities in Minnesota have been imposing on their city contractors. These project labor agreements compel city contractors to recognize a union affiliated with the Duluth Building and Construction Trades Council as the sole and exclusive representative of their craft employees, even if their employees have chosen a different union to represent them. The project labor agreements also compel the employees of city contractors to become dues-paying members of a council-affiliated union while performing city work. The District Court held that the plaintiffs lack standing to sue, and it held in the alternative that the plaintiffs' constitutional challenge to the union security clause fails on the merits. Each of these holdings is wrong and should be reversed. Can I ask you about the merits, which is, is it the mere act of joining, being forced to join the union the problem, or is there some speech of the union to which they object? I'm trying to fit this in the Janus case, and I'm wondering how you can do that. In our view, the mere fact that they're being compelled to join and pay a council-affiliated union is the problem. We don't believe Janus requires us to identify specific speech acts taken by the union that they oppose. It's simply the fact that they are being compelled by a city, by a public entity, to pay money to a union as a condition of receiving city work. A city cannot do that to its own employees. Does that kind of look like, though, the limitation on Janus that was suggested, which is we're not, we're not dealing with private unions here? We're not, and I know there's government compulsion sitting out there, but this is a private union. It is. It is. So this is essentially what you're saying is the defendant's argument in this case, that because this is not a public sector union, it is a private union that represents employees in the private sector, that Janus is categorically inapplicable. Our view is the problem that we see from a First Amendment standpoint is that it is a city, a governmental entity that's bound by the First Amendment, that is taking action to compel the employees of city contractors to pay money and join, not just pay, but join, which goes beyond the situation in Janus. That was a mere agency shop. A union as a condition of receiving city work. They are banned from receiving city work as contractors unless they pay money to this union. And that's as much of an offense to the First Amendment as the situation in Janus, because you have in both situations a governmental entity, either a city or a State unit of government, that is telling either its own employees, which was the case in Janus, or in this situation, the employees of its contractors, that they cannot work for the city in any capacity on these construction projects covered by a project labor agreement unless they pay money to a union and even join the union, essentially imposing a union shop arrangement on the employees of city contractors. Whether Janus should be extended to that is really the question for this Court to resolve. We don't think Janus rules this out, which I think is what your question is suggesting. I think the hard thing is, is if there was a specific speech that you could identify that the union was taking to which the people who are forced to join, like, for instance, if they were taking some public stance on race, you know, diversity in the workforce or something like that, to which they disagreed, it would be a much stronger government compulsion slash free speech claim than just simply saying, I'm forced to pay into the union. I think the problem here, though, just to stress, is that the union will still be representing these employees and will inherently engage in speech activity when doing that. There's no way a union can represent employees, either in the public sector or the private sector, without engaging in speech, because they are being essentially the representative standing in for the employees at the bargaining table. And that's fine if they've been duly elected by the employees and they've been chosen by the employees through the process set forth in the National Labor Relations Act. But in this situation, the City of Duluth, the City of Two Harbors, the other cities that we have sued as named defendants are coming in and saying that even if you've chosen a different union to represent you, you have to go with a council-affiliated union, whether you like it or not. And that, in our view, infringes the right of not just the right of free speech, but simply the right also of expressive association, the right to choose the people that you want to represent you in any capacity, whether it's at the bargaining table or outside that context. There are First Amendment problems with this arrangement. Now, again, Janus is not directly on point. We're not saying that Janus compels an outcome in our favor. But our argument is that the principles behind Janus are equally applicable to this situation, because it involves a situation where a governmental entity is trying to force either its own employees, or in this case, the employees of its city contractors, to join and pay a union that they would rather not be affiliated with. That's the problem we see on the merits. If I could shift back to standing for a moment, because obviously the Court has to resolve the Article III standing issues before it can even consider the merits. But which plaintiff is your best plaintiff? The Christian Labor Association has the cleanest argument for standing, Your Honor. I think all three of them actually have standing. We only need to show that one of them does because we're all seeking the same relief. One plaintiff is enough. We don't have to show that all three can make an independent showing of standing. But the Christian Labor Association is a union that has members, and each of the members in the Christian Labor Association is suffering injury in fact from these project labor agreements because they are excluding these individual workers from obtaining contracts or work on a city project that's covered by a PLA unless they join a council-affiliated union. Now, the defendant's answer, and the district court accepted this argument, is that the Christian Labor Association has no members at all. Because in Joni Tulinchik's deposition, the president of the union, she was asked about the LM-II forms that the National Union submits to the Department of Labor. And they were asked on the form to fill out the number of members that the National Union has, and the answer was zero. But she clarified, not only in her deposition, but also in her subsequent declaration, that members of the Christian Labor Association are members of both the local affiliate and the national organization, and the Department of Labor requires unions, when they report their members on the LM-II and LM-III annual forms that they submit, to list their members as members of the local affiliate union and not members of the national organization. It's understandable. So is that a factual finding? Like, that's a factual finding, right, by the district court? How do we view that? That seems to be sort of at the core of your, I guess, dispute with how the district court ruled on the CLA. It is a question of fact. The district court didn't make factual findings because he resolved this on summary judgment. So there was no findings of fact under Rule 52. So for this court, the question would be, is there a genuine dispute of material fact? Now, we believe there isn't, because we think the evidence is clear in our favor. But to reverse summary judgment, all that we need to show is that there's at least a disputed factual question. We, though, would respectfully ask the court to go further and say the evidence conclusively shows that there are, the national organization collects over a half a million dollars a year in annual membership dues. That's not possible unless you have members who are paying those dues to the national organization. So all this was explained, again, we acknowledge the LM2 forms. If you look at how they report members, say that there were zero members of the national organization. But all this was explained because the Department of Labor rules require you to report the members on the LM2 forms as members of the local affiliate. That doesn't mean that they're no longer members of the national organization. The other point I would make, Judge Kelley, is even if the district court were right to say that the individual workers are not members of the national organization, the national organization still has standing because the local affiliate unions are indisputably members of the national organizations. And each of them would have standing to sue in its own right. So we can get to organizational standing either way, coming or going, because we could rely either on the workers who are members of the national organization, or we could rely on the local affiliates that are equally members of the national organization. So either way, the Christian Labor Association will have organizational standing to assert the claims either of the individual workers that belong to that union or the local affiliates that compose the national organization and constitute that. And then the district court would sort of drill down even further, right, because that's an affiliate, not an individual, right, instead because you didn't have any individual? Well, he said we have no members, meaning no individual workers or members of the union. So again, we had two responses to the district court. One is to say, look, the workers are members of both. They're members of the local entity. They're members of the national organization. And Joanie Tulinczyk says this in her declaration, and it's unrebutted. The other point we made is even if you want to indulge this fiction that the national organization has zero members, we have another path to get to organizational standing, and that's to rely on the local affiliates as the constituent parts of the national organization, because each of them would have standing to sue, essentially, as organizations as well. It's almost double-layered organizational standing, and they can then rely on their own individual workers to give the local affiliate standing, which then we give the national organization standing. So that's the most straightforward plaintiff. Now, the others also have standing, which we explain in our brief. Luke Koren, who's our individual worker plaintiff, the plaintiffs say that he's a supervisor. Now, even if that's true, and it's not, but even if we were to indulge that assumption, he would still have standing to sue simply from the fact that he is an employee of Nordic, and Nordic is losing work. They have lost work in the past, and they're losing work opportunities in the future on account of the project labor agreements because they're not willing to agree to the terms of those project labor agreements when they seek city contracts, and I see them into my rebuttal time. I have two questions I want to ask before you sit down. The first is, were all of the plaintiffs, was every plaintiff found by the district court to lack standing? Yes. So then why did the district court go forward on the merits? We asked the court to do that for purposes of judicial economy, and I believe it was acceptable for the district court to do that, to say, not that I'm reaching the merits, but to say that if I were to reach the merits hypothetically, even though I found an absence of Article III standing, this is how I would rule. Because if the court, if the district court did not do that, and this court were to reverse on the standing question, then we'd have to go back to the district court again for ruling on the merits and then potentially come back to this court again on appeal. So I don't think that was inconsistent with Steele Co. Steele Co. says you can't reach the merits unless you first establish that subject matter jurisdiction exists. So you think what the district court wrote was really not a decision on the merits, but thinking out loud? Yes, I think that is. I probably would characterize it in a more charitable way. I think it was an effort by the district court to respect the limits on its jurisdiction while simultaneously making things easier for this court on appeal and making it easier for the litigants. Because I wouldn't go so far as to say it was an advisory opinion, but it's the district court announcing how it would have ruled on the merits had it found Article III standing to be extant. Okay. And then the other question is, aren't all of these standing issues with respect to the various plaintiffs, aren't there really fact questions with respect to each of them? There are some questions of fact, yes. Can you really say as a matter of law that all of these individuals and entities have standing? I mean, aren't there factual questions wrapped up? For example, on the individual, what are his duties? What did he actually, how did he actually perform his responsibility? What was his job description? Those kinds of things. If there are disputed questions of fact like what Your Honor is suggesting, then the court should reverse the grant of summary judgment. Because the district court granted summary judgment to the defendants. He said we're not even entitled to a trial on these factual questions. And for that to work, the defendants would have to show that no reasonable fact finder, either a jury or a judge holding a bench trial, could possibly conclude that Mr. Corrine is a non-supervisor. And we don't think they have a chance of showing that. We actually think the court should go further and say that we've conclusively demonstrated on the record that he's not a supervisor. But if the court disagrees with that and thinks that the evidence is at least contested. As a matter of law, on what was produced, as a matter of law, he was an employee. Right. But the court could also just vacate the grant of summary judgment and remand for a trial on these questions if the court does not think the record evidence is conclusive one way or the other. Then looping back on why the district court went to the merits, can we basically just ignore that? The court can certainly ignore it. Is this a standing appeal? The court certainly has the prerogative to ignore the merits. If the court wants to take a strict view of Steele Co. and say, and first, the court would have to rule against us on Article III standing to say we can't reach the merits. So I don't want to. I understand. If the court is going to disagree with our position on Article III standing and say that we have failed even to show a reasonable issue of material fact on the issue of Article III standing, I think the court can say we will not reach the merits because of Steele Co. The court could, I suppose, if it wants to, go on to reach the merits for, if there's the possibility of a further appeal to the U.S. Supreme Court. But I think that is Well, this is a court, you know, this is an appellate court, and we review decisions. And if the district court really wasn't making a decision but was thinking out loud about how it viewed it, is there really anything for us to review there? Not really. I mean, what the district court's decision was, was that my clients lacked Article III standing, so the case had to be dismissed for lack of subject matter jurisdiction, a dismissal of the claims without prejudice. That's the, it's not really a judgment, but that is the final decision of the district court that this court is reviewing. And it did not enter judgment on, it could not enter judgment on the merits for either side because it found that we lacked Article III standing and, therefore, lacked jurisdiction. Okay. Thank you. Thank you, Your Honors. And I will allow you some additional time on rebuttal. Great. Thank you. Since I took up your time. Mr. Newman, you may proceed. Thank you. Good morning. May it please the Court. I want to start with a reminder of what this case, what is remaining in this case. And that is a very limited claim. It's a First Amendment claim based on Janus with respect to one particular aspect of the Project Labor Agreements, three of the four Project Labor Agreements at issue. And that is the Union Security Clauses, which were in the Project Labor Agreements at the time the complaint was filed. The claim is that the Union Security Clause violates the First Amendment under the Supreme Court's decision in Janus, and plaintiffs concede on page 45 of their opening brief, that that First Amendment claim belongs to the employees. There's only one employee plaintiff in this case, and that's Mr. Luke Curheen. And the Christian Labor Association standing rises and falls with Mr. Curheen standing because that is the only member of the Christian Labor Association, this is undisputed, that they identified that could have standing in this case. So I'm going to start with the standing of Mr. Curheen, and it is undisputed to your question, Judge Shepherd, with respect to the factual question. This is what is undisputed. It is undisputed that the only employee plaintiff in this case never worked under the Project Labor Agreements, ever. Never paid any dues to any of the union defendants, never was required to pay any dues to the union defendants, and was never in any imminent danger of being required to pay dues to any of the union defendants. Well, isn't that because they really couldn't bid on the projects because not everyone was willing to join the union, or at least that's a reasonable inference you can draw from the  There's nothing, well, this is not on a motion to dismiss. This is 912B6. We're here on a Rule 56. And what is, again, what is undisputed is there is nothing in the Project Labor Agreements themselves, and in fact, there's an affirmative clause in the agreements, and in the enabling legislation at the municipal level, it's very clear that it doesn't matter whether you operate on a union or non-union basis outside of the world of public contracting. Everyone is able to bid on these projects. The contractors in this case chose not to bid. There are declarations in the record. The Nordic Group, which is the employee of Mr. Kareem, that declaration's on JA 268 and 269, in which they say they won't bid on Project Labor Agreements, they haven't bid on Project Labor Agreements in the past, and they won't bid on Project Labor Agreements in the future. So the only plaintiff in this case that could possibly have a Janus issue because they were forced to pay union dues or they were under imminent danger to be forced to pay union dues is an employee. And that employee's employer said, we're not going to bid, we'll never bid, and we won't bid in the future. And there's a variety of reasons why they won't bid. But what is not in this case, and what my friend Mr. Mitchell, you know, started with was the idea that they're not going to bid because their employees are represented by the Christian Labor Association, and the exclusive representative under the Project Labor Agreements are my client, the Duluth Building Trades. That's a different issue. That's an exclusive representation challenge not made in this case, and I think not made in this case for good reason, because this circuit has decided in the Hanton case, in the Higgins case, in the Bierman case, all cited on page 27 of our brief, that that's perfectly appropriate and perfectly constitutional. The claim is over so-called compelled subsidization of union speech. That's the only claim, and no plaintiff in this case was compelled to subsidize union speech. My friend Mr. Mitchell says none of that matters, because the injury on which they rely is the so-called lost job opportunities. And to be clear, the only plaintiff in this case wasn't unemployed. The theory is, because his contractor refused to bid on these projects, he lost the ability to work on Project A as opposed to Project B. And the theory, the plaintiff's standing theory of injury in this case, is that is sufficient injury for Article III, and I think they're simply wrong. And there is one case, and we cite it in our brief, the Associated Builders and Contractors case out of the Third Circuit, and I'm not lost. I realize I'm arguing before the Eighth Circuit, but I want to start with that case, because it is incredibly analogous to the case that's before that. Before you get to the case in particular, suppose the contractor had come in to Mr. Kieran and said, you know, I'd really like to bid on these Duluth projects, love to bid on these Duluth projects, but you got to join the union, because it's going to be a handicap for us if you don't join the union, and so you got to do it. And then we're here. Would there be standing under, in your view, would there be standing under those circumstances? I think that's a much different case, and there could be an imminence argument with respect to injury, because, again, the only plaintiff that could have standing here that's not relying on a third-party standing or not relying on associational standing is the employee. And if the employee could demonstrate to the court that it was under, you know, an imminent threat of being forced to, you know, pay a subsidy to the union with respect to speech in which it didn't disagree, I will concede that's a much harder case for us. I think still there's an issue, well, what's the speech, as you had said, what's the speech with which you don't, you know, you disagree with? There's been no identification of that speech here. But I do think that's a, you know, that's a much harder case for me, but we're not within a mile of that. That's not even their theory. Their theory has nothing to do with the union security clause. Their theory is simply that their contractors as a business decision choose not to bid on projects that are covered by the project manager. And you don't think it matters what the business decision was, like, or what the reason for the business decision was? If they had clear evidence, and maybe they do and maybe they don't in your view, but if they had clear evidence that the sole reason why they weren't bidding on these projects is because the employees would be very unhappy about joining the union on speech grounds, that's not enough in your view? No. It's not, but I'll concede that's a harder case. It's not because it's, you know, again, the question is you have to look at it through the employee's eyes. Were they ever required to subsidize the union or were they ever under an imminent threat? And here the injury, again, would be this lost opportunity to work on a particular project. That's not a, what I'll call a Janus injury. And I think that's a fundamental disagreement in this case, which is the plaintiff's theory of injury is that any injury whatsoever will suffice. It doesn't matter whether Mr. Kurheen was required to pay union dues. It doesn't matter whether he was under any imminent threat. The injury on which they rely is this notion of lost job opportunities. And I think that's just fundamentally wrong. What they said in their reply brief is that the invasion of a legally protected interest is not the standard when one is deciding whether there's been an actual injury. And that's just fundamentally wrong. Under Lujan v. Defenders of Wildlife, of course, the Supreme Court explained that an actual injury required to demonstrate the injury necessary for Article III is an invasion of a legally protected interest, which is concrete and particularized and actual or imminent. The Supreme Court in Warth, of course, said that standing and merits are different. I mean, but the claim that's being, that standing, excuse me, often does turn on the source of the claim asserted. So standing requires that the plaintiffs themselves have to suffer some actual or threatened imminent harm from the putative illegal action that they're challenging. That's the invasion of a legally protected interest. Has the plaintiff suffered from that which they are challenging? And here, the putative illegal action is the forced subsidization of union speech. That's the challenge. Being forced to subsidize the unions, regardless of the merits, regardless of whether we're correct that Janus doesn't apply to this case or not, that forced payment would be a sufficient injury for Article III purposes. Concede that. If there had been an actual payment or an imminent threat to make a payment. But it is, again, undisputed in this case that Mr. Kareen has never been required to pay dues, and he's never been in any imminent danger to pay dues to any of the unions. Now, you've said that there were multiple business reasons for the contractors to not bid on these public contracts. What is in the record for those multiple business reasons? And what do you mean by that when you say that phrase? So, the plaintiff's point, and this is more in the question of traceability, which I hope to get to if time would allow, they point to paragraph five of the declaration of Mr. Kareen's employer, and that's the Nordic Group. And they point to paragraph five of that declaration as evidence that the union security requirement was at least an incremental cause of their refusal to bid. So, to answer your question, if you look at that declaration, it says absolutely nothing about the union security clauses. It says that it refuses to bid, or excuse me, that it believes it's not eligible to bid, which is a false assumption, unless it recognizes the unions as the exclusive representative of the unions and hired employees from the union-affiliated hiring halls. That's it. Now, in its deposition, it also goes into question whether it would be subject to withdrawal liability under ERISA if he obtained a project under the project labor agreements. But the union security requirement has nothing whatsoever to do with exclusive representation or the hiring hall requirements. In the absence of any mention of the union security requirement in the declaration of the Nordic Group, and frankly, the declarations of all the contractors, is deafening, and I think is telling. There's nothing in the record from the contractor showing any connection between the union security clauses and the contractor's refusal to work. Counsel, let me ask you this. You really focused, you started by focusing on Kareen. I think I'm pronouncing that right. I think it's Kareen. Kareen, okay. Kareen is, but you don't rely on the supervisor point. The district court relied on the supervisor point. So, am I understanding you to think that maybe that's not as strong of a ground as sort of this attenuation type of analysis? Well, I'm not relying on that for two reasons. One, I do think that, I think it is a much simpler ground to say, hey, there hasn't been any alleged injury here, and the injury they've alleged is not traceable to the conduct that they're challenging. I think that's a simpler way to dispose of this case. But second, the plaintiffs assert that it doesn't matter with respect to standing. It doesn't matter at all whether Mr. Kareen is a supervisor or not because their theory of injury is this lost job opportunities. So, whether he would have been covered by the collective bargaining agreement under their theory or not is neither here nor there with respect to whether he suffered an injury because someone else, a third party, his employer, refused to bid on projects that were covered by the project labor agreement. So, I think to a certain extent, Mr. Kareen's supervisory status is somewhat of a red herring when we're talking about standing because of the plaintiff's theory of standing here, which again is not an injury with respect to being forced to subsidize a union. Their theory of standing, at least with respect to the injury, is this lost job opportunities. And I think that shows just how attenuated from the conduct that's being challenged here, the claim of injury here is with respect to the plaintiffs because what they are saying, which strikes me as a radical position, is that they're challenging a provision in a contract and they claim they have standing to challenge that provision even if they weren't covered by that contract. That can't be the law. A plaintiff employee, there's no way shape or form could have standing to raise a Janus claim if the collective bargaining agreement union security provision for which they're challenging wouldn't even cover them. But that's the theory of at least injury in this case. And with respect to that theory of injury, even if you accepted it, even if you accepted and I think it's wrong that lost job opportunities constitute a sufficient injury to bring a Janus challenge, there's no traceability here whatsoever. Number one, long after the union security clauses were removed, the contractor submitted declarations in this case, including the Nordic Group, saying they'll continue to refuse to bid on projects covered by the project labor agreements and they haven't done so in the Plaintiffs respond by arguing that traceability is not a question of what caused the harm, but is limited to the question of who caused the harm. And they are incorrect on that. This court in the Agri case stated that traceability requires a sufficiently direct, causable connection between the challenged harm, or excuse me, between the challenged action, excuse me, which would be the union security clause and the identified harm. So it's not just the question of who caused the harm, but also what caused the harm. And the harm of lost job opportunities was not caused by the union security clause. Even if it's a question of who and not what, the who here is Mr. Kurheen's employer, the Nordic Group. They made a business decision not to bid on projects covered by the project labor agreement. So they lose traceability on any connection between the challenge action and the harm they're claiming, and any connection with the challenge action and who caused that harm. I see my time has expired. If you don't have any more questions, I'd ask that the judgment of the district court be affirmed. Thank you, counsel. Let me stand aside and set the clock at two minutes. You may proceed. Mr. Newman says that Mr. Kurheen is the only member of the Christian Legal Association — I'm sorry, the Christian Labor Association that we have identified that could possibly have standing to sue as an individual. That is not true. We have said in Joni Chulinskik's declaration that appears on page 39 of our opening appellate brief that there are members of Locals 8, 78, and 84 that all work in the construction business in the Duluth area, and any one of those members of those locals would have standing to sue as individuals because they are being excluded from work on city projects that are subject to the PLAs because they will not join or pay a council-affiliated union. Do you have to identify individual members that are in those groups in order to have standing, or is it enough to just point that there are members in the area? It's enough to just point that those members exist. We don't have to identify them by name at this point of the proceedings because, again, this is on summary judgment. All we have to show is that there's evidence in the record that would at least warrant a factual trial to survive a motion for summary judgment. But we've done more than that. We have shown conclusively because this affidavit, this declaration from Joni Chulinskik is unrebutted on that point. So we've shown we're relying on much more than just Mr. Kurheen with respect to the organizational standing of the Christian Labor Association. The other point I want to make is that Mr. Newman points out that our contractor plaintiffs never bid on these projects and that our employee plaintiff, Mr. Kurheen, never worked on these projects and never paid dues to the unions. Of course that's the case. We say repeatedly throughout our brief that our clients are not willing to agree to the terms of the project labor agreements because the contractors can't use their own workforce on any city construction project that's subject to one of these PLAs. So they're never going to be in a situation where they've been subject to an agreement or have tried to bid on it. And they explain all this in the declarations. I would just direct the Court to footnote 4 of our reply brief, which is on page 1, where we cite all the relevant passages from the declaration explaining why they didn't bid on these projects because the terms of the PLAs are too onerous for them to work under. I'm happy to answer any other questions the Court may have. Roberts. All right. Thank you, Your Honors. You may stand aside. The case is submitted. Counsel, thank you for your arguments. They've been very helpful. And we will reach a decision as soon as possible. The Court will be in recess for 10 minutes.